HARRY H. DeLOSS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7588.   Promulgated April 11, 1927.

A loss sustained by reason of securities becoming worthless in 1920, and then known to be worthless, is not deductible in 1921, although sold in 1921 for a nominal consideration.

*Jonathan Grout, Esq.*, for the petitioner.
*George G. Witter, Esq.*, for the respondent.

This proceeding is for the redetermination of deficiencies as follows:

For the year 1921_____ $8,020.44
For the year 1922_____ 11,196.02

The deficiencies arose by reason of the action of the Commissioner in disallowing an alleged loss on the sale of certain shares of stock in 1921, and the refusal of the Commissioner to carry over to 1922 an alleged net loss in the sale of that stock in 1921.

The Commissioner asserts that the worthlessness of the stock was known in 1920, and that the loss, if any, was sustained in that year and hence is not deductible in 1921, and that the net loss in 1921 as claimed by the petitioner may not be carried over to 1922 as there was no loss at all in 1921.

The Commissioner also claims that the loss, if held to have been sustained in 1921, was not the result of operating a business regularly carried on by the petitioner. The petitioner claims that his stock was not worthless in 1920, that he did not know it was worthless and further that in 1921 he sold it at a nominal price for the purpose of closing it out in order to take the loss, as he had a right to do, which sale resulted in the loss as claimed by him and that such loss more than offset his taxable income from other sources; that he is entitled to carry over the net loss to 1922, he having no net income for 1920.

### FINDINGS OF FACT.

The petitioner is an individual who resides in Bridgeport, Conn. At the beginning of the year 1920 he was a large stockholder in and a director of the Hawthorne Co., a corporation. In April, 1920, it was decided by the directors, and ratified by the stockholders, to dissolve the corporation, and it was dissolved without bankruptcy or receivership proceedings, the directors acting as liquidating trustees. In June, 1920, said trustees offered for sale at public auction all of the corporation assets, except patents, patterns, special tools, trade name, cash, and accounts receivable.

At that sale certain of the machinery and merchandise, on account of lack of *bona fide* bids, were knocked down to the trustees at approximately $12,000. After that auction sale in June, 1920, there remained for liquidation the assets above named that were not offered for sale, together with those knocked down to the trustees. At that time claims aggregating $417,004.79 against the corporation had been allowed and $20,539.01 had been disallowed, and $33,130.94

were still under investigation. To meet those claims there was on hand $298,417.16 in cash and the unsold assets above mentioned.

On October 20, 1920, a dividend to creditors of 60 per cent was declared. At that time the trustees adopted and entered on the minutes a resolution that "it now appears that the net sum available for dividends to creditors will amount to about 70 per cent of the claims which may properly be allowed." In August 1920, the trustees estimated that the unsold assets might be sold for about $20,000. They were finally sold in 1922 or 1923 for $100.

In December, 1920, the petitioner sold, through a brokerage firm in New York, 824 shares of his Hawthorne Co. common stock for $6, for which he paid as commissions and other expenses $88.46. In December, 1921, petitioner sold the remainder of his Hawthorne Co. stock, 374 shares of common, and 550 preferred, through his New York brokers, for $12, and paid as expenses incident to such sale $73.83. On the last sale he figured his loss as follows:

| | |
|---|---:|
| Cost of 550 shares of preferred stock | $55,000.00 |
| Cost of 374 shares of common stock | 37,400.00 |
| Expenses of sale | 73.83 |
| | 92,473.83 |
| Less amount received from sale | 12.00 |
| | 92,461.83 |

The stock cost petitioner par value, in cash, or its equivalent. He deducted the loss as above shown, *pro tanto*, from his income for 1921, and seeks to carry over the remainder as a net loss, amounting to $35,080.82 as a deduction from 1922 income.

The petitioner was in 1920 and 1921, as well as years prior and subsequent thereto, regularly engaged in the business of buying and selling securities and borrowing and loaning money, although he was a stockholder in and an officer of the Handy & Harmon Co., which company paid him an annual salary of $10,000.

#### OPINION.

LOVE: Section 214 (a) (4) of the Revenue Act of 1921 provides that in computing net income there shall be allowed as deductions.

Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in trade or business.

It will be noted that in the case of a loss, it is deductible in the year incurred. It is not treated the same as a bad debt where the deduction is allowed in the year in which it is ascertained to be worth-

less. All the evidence in the instant case leads to the inevitable conclusion that petitioner's stock was worthless in 1920. He testified that he had a hope that the unsold assets, including the trade name, might be sold for enough to enable at least the preferred stockholders to realize something. However, we have, staring such hope in the face, his own declaration that on account of depressed business conditions there was no market for such assets; and further, the deliberately expressed conclusion of the trustees that the assets would not pay more than 70 per cent of claims of creditors; that after paying out all the cash on the 60 per cent dividend, there remained claims which had been allowed of more than $100,000, to pay which the trustees had nothing save the unsold assets. Those assets were actually sold, less than two years thereafter, for $100.

Under such conditions no reasonable business man would attach any value whatever to petitioner's Hawthorne Co. stock in the latter part of 1920, or any time thereafter. The sale of the 824 shares for the nominal price received establishes in our opinion not only the worthlessness of the 824 shares but also the worthlessness in 1920 of all the shares that the petitioner owned.

Petitioner seeks to invoke, as a rule, the idea that a loss of the character of the one here in question may be taken only on sale of the securities, and by way of corollary, that the loss may be taken at date of such sale regardless of when, in fact, the securities became worthless. It is true that in the case of a decline in market value of securities, it has been held that the loss so sustained may not be taken in the absence of a bona fide disposal of the securities, that is, the transaction must be a closed transaction. It may sometimes occur that in the absence of a sale, the worthlessness of the securities is a questionable proposition. We know of no case where it has been held by this Board, or by any court, that if a petitioner presents proof so convincing as to render it practically demonstrable that securities held by him became worthless in a given year, he was refused deduction because he had not sold them. This Board in several cases has allowed the deduction under such conditions. *Henry M. Jones v. Commissioner*, 4 B. T. A. 1286. It therefore follows that if the proof shows stock became worthless in a given year, the deduction must be taken for that year and may not be taken for any other year.

The petitioner's loss was sustained in 1920 and he may not take any part thereof for 1921 or 1922.

*Judgment will be entered for the respondent.*